SIGNED: April 1, 2021

THIS ORDER HAS BEEN ENTERED ON THE DOCKET.
PLEASE SEE DOCKET FOR ENTRY DATE.

Paul M. Black
UNITED STATES BANKRUPTCY JUDGE

Case 2:19-bk-00787   Doc 312   Filed 04/01/21   Entered 04/01/21 15:46:59   Page 1 of 12

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: | ) |
| | ) CHAPTER 7 |
| PANTHERA ENTERPRISES, LLC | ) |
| | ) Case No. 2:19-bk-00787 |
| Debtor. | ) |
| | ) |

## MEMORANDUM OPINION

Before the Court is a Motion for Award of Fees Against Bernstein-Burkley, P.C. filed by Panthera Training, LLC pursuant to Federal Rule of Bankruptcy Procedure 9011 (the "Motion").[1] Panthera Training alleges that Bernstein-Burkley, counsel for the Debtor, Panthera Enterprises, LLC (the "Debtor"), filed a complaint in bad faith and advanced it without first conducting a reasonable investigation. The Court held hearings on the matter on February 25, 2021 and March 15, 2021. At the conclusion of the second hearing, the Court took the matter under advisement.[2] Although the concerns expressed by Panthera Training about the actions taken by Debtor's counsel are not without merit, if not outright disturbing, the Court will deny the Motion as untimely.

---

[1] The individual attorneys at Bernstein-Burkley representing the Debtor were Robert S. Bernstein, who signed the Complaint, and John J. Richardson and Mark A. Lindsey, who advanced the litigation and defended the sanctions motion. No request for sanctions was made against any of them individually.

[2] United States Bankruptcy Judge Paul M. Black, Western District of Virginia, sitting by designation.

# FACTUAL AND PROCEDURAL BACKGROUND

A brief summary of the history and background of this matter is set forth below. A more detailed discussion of the various allegations in the Complaint will follow. The Debtor owns certain real property in Old Fields, West Virginia. AP ECF 1, p.2.[3] The property and its improvements ("the Facility") are used to conduct military and law enforcement personnel trainings. Pursuant to a 2018 lease (the "Lease"), Panthera Training assumed operation of the Facility. AP ECF 1, Ex. A. The Lease required Panthera Training to pay the Debtor $52,000.00 a month in "Base Rent" as well as "Additional Rent" according to a formula described in section four of the Lease. *Id.* It is uncontested that Panthera Training timely paid the Base Rent but the Debtor disputed the amount of Additional Rent due, along with other alleged defaults under the Lease. Notwithstanding express audit rights granted to it under the Lease, the Debtor did not undertake an audit of the Additional Rent calculations before filing the Complaint, nor did it hire a professional to do so on its behalf.

On September 13, 2019, the Debtor filed a voluntary Chapter 11 petition. Bankr. ECF 1. On October 17, 2019, the Debtor filed a Complaint for Turnover and Possession of Real and Personal Property and for Preliminary Injunction Against Possession of Property (the "Complaint") against Panthera Training which commenced Adversary Proceeding No. 2:19-ap-00051 (the "Adversary Proceeding"). AP ECF 1. Panthera Training filed an answer which asserted counterclaims of fraud, breach of contract, tortious interference, and included a request for a preliminary injunction. AP ECF 10. After it came to the attention of the parties that one of the Debtor's principals, James Punelli, was diverting funds of the estate, the Debtor's case was converted to Chapter 7 on July 21, 2020. Bankr. ECF 202. Aaron C. Amore was appointed the

---

[3] All references to documents filed in Adversary Proceeding 2:19-ap-00051 will be preceded by "AP ECF" and references to documents filed in the in underlying bankruptcy case will be preceded by "Bankr. ECF".

Chapter 7 Trustee (the "Trustee"). Shortly after being appointed, the Trustee filed an application to employ Kelly T. Smith, CPA of Smith, Elliot, Kearns & Company, LLC to investigate the allegations contained in the Adversary Proceeding. Bankr. ECF 216. The accountant investigated the allegations in detail and found them baseless. The Trustee then engaged in settlement discussions with Panthera Training, and a Rule 9019 motion to compromise was filed and properly noticed, requesting that the Court dismiss the Complaint and the parties' various claims against each other with prejudice. The Order of dismissal with prejudice was entered on December 15, 2020. AP ECF 100. The Adversary Proceeding was administratively closed on January 4, 2021.

After the Adversary Proceeding was closed, on January 8, 2021, Panthera Training filed the Motion in the main bankruptcy case asserting that Bernstein-Burkley failed to conduct a reasonable investigation before filing the Complaint and that they filed the Complaint for improper purposes. Bankr. ECF 265. Bernstein-Burkley filed an objection to the Motion asking the Court to deny the Motion for various reasons, including that the movant did not comply with Rule 9011(c) and that Bernstein-Burkley had ample bases on which to file the Complaint. Bankr. ECF 278. The Court held an initial hearing on February 25, 2021 and gave the parties time to attempt to resolve the dispute. At the second hearing on March 15, 2021, the parties advised that they were unable to reach an agreement and asked the Court to resolve the controversy, which it now does.

## JURISDICTION

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(a) and 157(a). The Court concludes that this matter is a "core" bankruptcy proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A). Venue is proper pursuant to 28 U.S.C. § 1409.

**CONCLUSIONS OF LAW**

    I.    <u>Federal Rule of Bankruptcy Procedure 9011 ("Rule 9011")</u>

All attorneys before a federal court, including those representing the estate of a debtor in possession, have duties under Federal Rule of Civil Procedure 11 ("Rule 11"). Rule 9011 conforms to Rule 11, and accordingly, "[c]ourts may look to case law interpreting Rule 11 when deciding cases under Bankruptcy Rule 9011." *In re Babcock,* 258 B.R. 646, 651 (Bankr. E.D.Va. 2001) (citing *McGahren v. First Citizens Bank & Trust Co.* (*In re Weiss*), 111 F.3d 1159, 1170 (4th Cir. 1997)); *In re Atlas Mach. & Iron Works, Inc.*, 190 B.R. 796, 806 (Bankr. E.D.Va. 1995).

Rule 9011 provides, among other things, that the signature of an attorney on a pleading constitutes a certificate that the content of the document is well grounded in fact and is warranted by existing law. The "well grounded in fact" requirement demands, at least, that the attorney not accept the client's version of certain facts "on faith." At a minimum, the attorney has a duty to probe the client carefully for the facts before including them in any document signed by the attorney or in any other way presented to the court. *See Fleming Sales Co., Inc. v. Bailey*, 611 F.Supp. 507, 519 (D.C.Ill. 1985).

The primary purpose of Rule 11 is "to deter baseless filings ... and thus, … streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S.Ct. 2447, 2454 (1990). The focus of Rule 11 "is ex ante (what should have been done before filing) rather than ex post (how things turned out)". *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 932 (7th Cir. 1989). Rule 9011, like Rule 11, "only applies to acts undertaken in a case before the court." *Davant v. Bailey* (*In re Bailey*), No. 09–2564, Adv. No.

10–15, 2010 WL 3277908, at *2, (Bankr. N.D.W.Va. Aug. 13, 2010). Rule 9011 provides in part:

> (a) Signature. Every petition, pleading, written motion, and other paper, except a list, schedule, or statement, or amendments thereto, shall be signed by at least one attorney of record in the attorney's individual name. …
>
> (b) Representations to the Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.
>
> (c) Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

Fed. R. Bankr. P. 9011(a)-(c).

Determining whether an investigation was reasonable pursuant to Rule 9011(b)(3) requires a case-by-case, fact intensive analysis dependent on all the circumstances. *Cooter & Gell,* 496 U.S. at 404. If a court finds that Rule 9011(b) has been violated, Rule 9011(c) permits the court, within its discretion, to impose sanctions upon the offending attorney or party. *See Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004) ("Even if the district court concludes that the assertion of a given claim violates Rule 11, however, the decision whether or not to

impose sanctions is a matter for the court's discretion."). That same discretion applies to a bankruptcy court.

II.  Rule 9011(c)(1)(A): Safe-harbor Provision

If Rule 9011 sanctions are sought by motion, the movant must comply with the safe-harbor provision contained in Rule 9011(c)(1)(A) which requires the offending party be given notice and an opportunity to cure the offending conduct. "The safe-harbor provision is a strict procedural requirement." *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175 (2d Cir. 2012). Specifically, the safe-harbor provision requires:

> The motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.

Fed. R. Bankr. P. 9011(c)(1)(A).

Rule 9011(c)(1)(A) grants "a time period between the time of service and the time for filing, [which] is designed to allow for the correction of the alleged violation." 10 *Collier on Bankruptcy* ¶ 9011.06[1][b] (15th ed. rev. 2010). In *Rector v. Approved Federal Savings Bank*, 265 F.3d 248 (4th Cir. 2001), the Fourth Circuit noted that "[t]he primary purpose for [the 1993 amendment that added the safe-harbor provision] was to provide immunity from sanctions to those litigants who self-regulate by withdrawing potentially offending filings or contentions within the 21–day period." *Id.* at 251 (citing *Ridder v. City of Springfield,* 109 F.3d 288, 294 (6th Cir. 1997)). Consistent with that purpose, the court held in *Brickwood Contractors, Inc. v. Datanet Engineering, Inc.,* 369 F.3d 385, 396 (4th Cir. 2004), that an award of sanctions was not

6

permissible where the party who filed the offending motion was not provided an opportunity to withdraw the motion in question before the court ruled on the motion.[4]

III.   Analysis

Panthera Training alleges that Bernstein-Burkley filed the Complaint in bad faith and for improper purposes without first conducting a reasonable investigation as Rule 9011 requires. Bankr. ECF 265, p.1.  Panthera Training seeks sanctions, in the total amount of $63,556.00, as reimbursement for attorneys' fees incurred by Panthera Training in defense of the Complaint.  *Id.* at 13.

   A.  Application of Rule 9011

This case pivots on the procedural requirements of Rule 9011.  Rule 9011(c)(1)(A) requires a party seeking Rule 11 sanctions first to serve a proposed motion on the opposing party and to give that party at least 21 days to withdraw or correct the offending matter.  Only after 21 days has passed may the motion be advanced.  As the Seventh Circuit put it: "[t]o mix naval metaphors, the party seeking sanctions must first fire a warning shot that gives the opponent time to find a safe harbor."  *N. Illinois Telecom, Inc. v. PNC Bank, N.A.*, 850 F.3d 880, 882 (7th Cir. 2017).

Here, the party seeking sanctions failed to comply with that procedure.  First, Panthera Training fired no warning shot. Counsel did not send the proposed motion for sanctions or even a notice to Bernstein-Burkley before filing it with the Court.[5]  *See Brickwood*, 369 F.3d at 396

---

[4] Other courts similarly have concluded that a failure to comply with the safe-harbor provision contained in Rule 11 and Rule 9011 precludes the imposition of sanctions pursuant to subparagraph (c)(1)(A).  *See, e.g., Gordon v. Unifund CCR Partners,* 345 F.3d 1028, 1030 (8th Cir. 2003); *Radcliffe v. Rainbow Constr. Co.,* 254 F.3d 772, 789 (9th Cir. 2001); *Aero–Tech, Inc. v. Estes,* 110 F.3d 1523, 1528–29 (10th Cir. 1997); *Elliott v. Tilton,* 64 F.3d 213, 216 (5th Cir. 1995); *Hadges v. Yonkers Racing Corp.,* 48 F.3d 1320, 1328 (2d Cir. 1995).

[5] Whether a notice is sufficient to comply with the warning-shot/safe-harbor requirement is controversial.  Most circuits, including the fourth, say no. *See Penn, LLC v. Prosper Business Dev. Corp*., 773 F.3d 764, 767–68 (6th Cir.

("Failure to timely raise the safe-harbor issue amounts to a forfeiture of the issue" and "a district court exceeds its authority by imposing sanctions requested through a procedurally-deficient Rule 11 motion"). Assuming for present purposes the Complaint was frivolous, more on that later, Bernstein-Burkley was not afforded the opportunity to self-regulate. This contravenes the entire purpose of the safe-harbor provision. *See Rector,* 265 F.3d 248. This procedural defect alone is fatal.

Second, in the circumstances of this case, the Motion is untimely. As to timing, the Fourth Circuit has observed that a motion for sanctions should be "served promptly after the inappropriate paper is filed, and, if delayed too long, [it] may be viewed as untimely." *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 152 (4th Cir. 2002) (quoting Fed. R. Civ. P. 11 advisory committee's note). Moreover, "the 'safe harbor' provisions of Rule 11(c)(1)(A) preclude the serving and filing of any Rule 11 motion after conclusion of the case." *Id.*; *see also In re Pennie & Edmonds LLP*, 323 F.3d 86, 89 (2nd Cir. 2003) ("[T]he 'safe harbor' provision functions as a practical time limit, and motions have been disallowed as untimely when filed after a point in the litigation when the lawyer sought to be sanctioned lacked an opportunity to correct or withdraw the challenged submission.").[6] Here, the Motion was filed after the Adversary Proceeding was already settled, dismissed with prejudice, and closed.[7] If the Adversary Proceeding was as

---

2014) (reviewing circuit split: Second, Third, Fourth, Fifth, Sixth, Eighth, Ninth, and Tenth Circuits have rejected "substantial compliance," and only Seventh Circuit has adopted it).

[6] Consistent with *Hunter*, the Northern District of West Virginia has previously interpreted this "safe harbor" provision to not only provide a party the opportunity to cure a defect, but also to preclude Rule 11 motions once a matter has been ultimately decided by the court. *Balcar v. Bell & Assocs., LLC,* 295 F.Supp.2d 635, 638–39 (N.D.W.Va. 2003); *Givens v. Criswell*, No. 5:08CV25, 2010 WL 10862445, at *3 (N.D.W. Va. June 24, 2010), *aff'd sub nom. Givens v. Main St. Bank,* No. 5:08CV25, 2010 WL 2949621 (N.D.W. Va. July 22, 2010).

[7] In bankruptcy, adversary proceedings generally are viewed as "stand-alone lawsuits," and final judgments issued in adversary proceedings are usually appealable as if the dispute had arisen outside of bankruptcy. *See generally* 16 Wright, Miller & Cooper, *Federal Practice and Procedure,* Jurisdiction 2d § 3926.2 (2d ed.1996). *In re Boca Arena,*

baseless as Panthera Training contends, it should have acted sooner. Much sooner. To follow the Seventh Circuit's lead and use another naval metaphor, that ship has sailed.[8]

While the Court shares many of Panthera Training's misgivings about Bernstein-Burkley's conduct, and will address those deficiencies in the subsequent section, the Court will not contravene the plain language of Rule 9011. The Motion's procedural defects preclude the Court from granting the relief requested.

B. Counsel's Conduct of the Case

Though Bernstein-Burkley has avoided sanctions under Rule 9011, the Court is troubled by the Motion and what transpired in this case. The Court would be remiss if it did not address those concerns. Had the Motion abided by the Rule 9011(c)(1)(A) procedural safeguards, and had the Court been on the case at the time, the Motion may well have been granted. The record reveals a scant, if any at all, investigation by the Chapter 11 debtor's counsel into the facts. A great deal of time, effort, and money was expended in this litigation that easily could have been avoided.

At a minimum, Rule 9011(b)(3) places on attorneys a duty to make some affirmative investigation into the facts represented in documents submitted to the court. *In re Obasi*, No. 10–10494 SHL, 2011 WL 6336153 at *5 (Bankr. S.D.N.Y. Dec. 19, 2011). While "the investigation performed by a signatory need not be to the point of certainty to be reasonable," a "signer must explore readily available avenues of factual inquiry." *Id*. Though an attorney may

---

*Inc.*, 184 F.3d 1285, 1286 (11th Cir. 1999). A request for Rule 11 sanctions in stand-alone litigation is one that should have been brought in the stand-alone litigation.

[8] At argument on the Motion, counsel for Panthera Training alternatively asked that the Court exercise its inherent authority and impose sanctions. However, that request was never made in Panthera Training's pleading, and the Court will neither award that relief now nor consider it in a second follow up. This matter has been fully briefed and argued. The Court trusts that this opinion will give Bernstein-Burkley the opportunity to reflect on its litigation conduct going forward.

9

generally rely on objectively reasonable client representations, the attorney must independently verify publicly available facts to determine if the client representations are objectively reasonable. *Hadges v. Yonkers Racing Corp*. 48 F.3d 1320, 1329 (2d Cir. 1995). There is no evidence that was done here.

Here, even a perfunctory investigation by Bernstein-Burkley into Panthera Training's financial records could have stopped this litigation at the outset. The gravamen of the Complaint is that Panthera Training owed the Debtor "Additional Rent … for the months of October 2018, November 2018, December 2018, April 2019, May 2019, and June 2019 in the total amount of $218,469.00." AP ECF 1, p. 3. Section four of the Lease defines "Additional Rent" as "an amount equal to fifty-percent (50%) of the Tenant's prior month's Profit" based upon Panthera Training's taxable income. AP ECF 1, Ex. A. Further, section four provides: "[u]pon request of Landlord, Tenant shall fully cooperate with a request to audit Tenant's books and records, supplying all documents and backup requested." AP ECF 1, Ex. A. At both the February 25, 2021 and March 15, 2021 hearings, counsel for Panthera Training advised the Court that he had urged Bernstein-Burkley to inspect Panthera Training's financials records. Panthera Training contends it was apparent all along that no additional rents were owed based upon the formula set out in the Lease. Yet, despite its ability to do so, the Debtor never exercised its audit rights.

When the Trustee was appointed, he promptly hired Kelly T. Smith, CPA as an independent accountant to conduct an audit. The Trustee's audit revealed Panthera Training's taxable income did not merit any "Additional Rent" due under the Lease. The audit cost the estate only $6,102.00, and tens of thousands of dollars of attorney's fees have been attributed to this litigation on both sides. The Court finds Bernstein-Burkley's explanations for failure to

audit Panthera Training's books and records before filing the Complaint strain credibility.[9] It had the express contractual right to do so and chose not to. To the extent it relied on James Punelli as the primary basis for its factual investigation, that was clearly grossly deficient.[10] As stated in *In re Wilde Horse Enterprises, Inc.,* 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991), "the Rule provides, among other things, that the signature of an attorney on a petition, pleading or motion constitutes a certificate that to the best of the attorney knowledge, information or belief 'formed after reasonable inquiry,' the content of the document is 'well grounded in fact and is warranted by existing law....' The 'well grounded in fact' requirement demands, at least, that the attorney not accept the client's (or the client's principal's) version of certain facts 'on faith,' but at a minimum the attorney has a duty to probe the client carefully for the facts before they are included in any document signed by the attorney or in any other way presented to the Court."

The Court is also troubled by the Debtor's misconduct documented elsewhere in this case, and counsel's failure to bring that to the surface in a timely manner. Such conduct has caused substantial legal fees to be incurred by both the estate and other parties. This led the Court to enter an order effectively reducing Bernstein-Burkley's fee request as Chapter 11 counsel by approximately fifty percent in the main bankruptcy case. Bankr. ECF 311. However, the procedural posture being as such, the Court will be guided by the Fourth Circuit's admonition in *Brickwood* that a trial court "exceeds it authority by imposing sanctions requested through a procedurally-deficient Rule 11 motion." *Brickwood*, 369 F.3d at 396.

---

[9] Panthera Training ascribes various ulterior motives to the Debtor's conduct, including manufacturing a breach of the Lease in an attempt to regain possession of the property, to which the Court expresses no opinions.

[10] The Debtor alleged other breaches of the Lease by Panthera Training, such as failure to pay real estate taxes and failure to maintain proper insurance, which were also subsequently debunked and proven meritless.

## **CONCLUSION**

For all of the above reasons, the Motion is denied. A separate Order will be entered contemporaneously herewith